IN THE CIRCUIT COURT, SEVENTH
JUDICIAL CIRCUIT, IN AND FOR
ST. JOHNS COUNTY, FLORIDA

CASE NO.:   CA 13-1672
DIVISION:                   55

JEREMY BANKS,

     Plaintiff,

v.

RUSTY RAY RODGERS, an individual
and the FLORIDA DEPARTMENT OF LAW
ENFORCEMENT,

     Defendants.

_____/

FILED 2013 NOV 13 P 1:2

## COMPLAINT

Plaintiffs, JEREMY BANKS, by and though his undersigned counsel, hereby sues Defendants, RUSTY RAY RODGERS, individually, and the FLORIDA DEPARTMENT OF LAW ENFORCEMENT, and alleges as follows:

## JURISDICTION, VENUE AND PARTIES

1.     This is an action for damages in excess of the $15,000.00 jurisdictional limits of this Court.

2.     Counts I, II and III of this Complaint are brought pursuant to 42 U.S.C. §1983, which authorizes actions to redress the deprivation, under color of state law, of rights, privileges and immunities guaranteed to Plaintiff by the United States Constitution. This Court has concurrent jurisdiction over federal claims which arise under the United States Constitution. Original jurisdiction over the Defendant FDLE lies in the State Courts of Florida.

CA 13-1672

3.      Counts IV, V and VI of this Complaint are brought pursuant to the common law of the State of Florida.  This Court has jurisdiction to hear and decide claims arising out of state law.

4.      Plaintiff, JEREMY BANKS is, and was at all times material to this action, a United States citizen and resident of St. Johns County, Florida.  Plaintiff is and was at all times relevant, employed as a Deputy Sheriff by the St. Johns County Sheriff's Office.

5.      Defendant, the FLORIDA DEPARTMENT OF LAW ENFORCEMENT ("FDLE") is an agency of the State of Florida, with a field office located in St. Johns County, Florida.

6.      Defendant, RUSTY RAY RODGERS ("Agent Rodgers") is, upon information and belief, a resident of Duval County, Florida.  Agent Rodgers was at all times material a Special Agent and employee of Defendant, FDLE, conducting an investigation from the FDLE's St. Johns County Office.

7.      Most of the events giving rise to this action occurred in St. Johns County, and some occurred in Duval County, Florida.  Venue is proper in St. Johns County, Florida.

## PREDICATE FACTS SUPPORTING
## THE CAUSES OF ACTION

### PRÉCIS

These claims arose from an FDLE investigation into the September 2, 2010 death (suicide) of Michelle O'Connell in St. Augustine, St. Johns County, Florida.  The seminal facts, circumstances and events which form the basis of the claims against the Defendants follow. These allegations are a summary of the relevant actions from which the claims arose, and are not inclusive; additional supportive facts and circumstances are demonstrated in the St. Johns County Sheriff's Office Review of Michelle O'Connell's Death Investigation (including the

2

SJSO's recorded findings), records of the FDLE, and the findings of special prosecutor Brad King, State Attorney of the 5th Judicial Circuit, who was assigned by the Governor of the State of Florida to investigate the issues involved.

## FACTUAL ALLEGATIONS COMMON TO ALL COUNTS

8.     On September 2, 2010, officers of the St. Johns County Sheriff's Office ("SJSO") responded to a 911 call placed by Jeremy Banks at approximately 11:20 p.m., stating that his girlfriend, Michelle O'Connell, had just shot herself with his duty weapon. Ms. O'Connell was declared deceased at 11:48 p.m., and an investigation of the incident was immediately commenced by the SJSO.

9.     The SJSO's investigation determined Michelle O'Connell's death to be a suicide. Two days after her death, Dr. Frederick Hobin, Office of Medical Examiner of the Seventh Judicial Circuit of Florida, made an official determination the death was the result of a self-inflicted gunshot wound and the manner of death a suicide.

10.     On January 18, 2011, Sheriff David Shoar of SJSO contacted FDLE to request an independent review of the case, primarily due to the family relationships involved and reports of alleged comments by members of the O'Connell family questioning whether Michelle's death was a suicide.

11.     In February 2011, the FDLE began their review of the case under the supervision of FDLE Special-Agent-in-Charge, Dominic Pape ("SAC Pape"), and in conjunction with staff from the State Attorney's Office of the 7th Judicial Circuit, (the "SAO 7th"). SAC Pape assigned the case to his subordinate, Defendant, Agent Rodgers. Agent Rodgers' investigation took place primarily out of the St. Augustine, St. Johns County FDLE field office, with some events occurring at the Jacksonville, Duval County office.

12.     From the outset of his investigation, Agent Rodgers operated under his predetermined theory and conclusion Jeremy Banks was criminally culpable in the death of Michelle O'Connell. No less than nine days after beginning his review of the case, Agent Rodgers began addressing this case verbally and in documents as a "homicide," and began referring to the scene of the death as the "crime scene". He repeated these references to investigative witnesses prior to and during interviews.

13.     Throughout his review and investigation of the case, Agent Rodgers engaged in blatant, unlawful and wrongful conduct which evidenced a biased intent to advance his predetermined theory Michelle O'Connell was the victim of homicide committed by Jeremy Banks. Agent Rodgers' misconduct includes, but is not limited to, the following:

a.     Agent Rodgers initiated and maintained inappropriately close relationships with members of the O'Connell family and friends of Michelle, convincing them she was the victim of a homicide perpetrated by Jeremy Banks through use of falsehood and unsupported innuendo.

b.     Agent Rodgers coached witnesses before, during and after their "on the record" interviews, sharing his theories of what he believed occurred and his perception of what the evidence demonstrated. He would gain a witnesses' confidence in his theories and then conduct a record interview after purposely skewing objectivity.

c.     Agent Rodgers purposefully withheld vital, exculpatory information and advanced false information to the Court, (including a County Judge when pursuing a search warrant), the SJSO, witnesses and others associated with the case in an effort to have Jeremy Banks charged with murder.

4

d.   Agent Rodgers unduly influenced or attempted to influence experts in the case, and presented false and misleading information to medical authorities in his quest to have the official findings changed from suicide to homicide.

e.   Agent Rodgers unlawfully detained and arrested Jeremy Banks and unlawfully seized his property without probable cause or due process of law.

f.   Agent Rodgers knowingly provided false and misleading information to the Court in order to obtain search warrants for Jeremy Banks' residences and to convince the Court of the existence of probable cause to believe Jeremy Banks committed murder.  Moreover, Rodgers advanced a completely false and baseless allegation to the Court that the SJSO was "covering up the truth."

g.   Agent Rodgers made numerous derogatory and offensive statements against Jeremy Banks to Michelle O'Connell's family members and witnesses, including constantly calling him names and implying he posed a danger to them.  Agent Rodgers made conclusory allegations to the media and reporters regarding his perception and theory as to what occurred.

h.  In his representations to the Court and others associated with the case, Agent Rodgers purposefully minimized or totally omitted exculpatory evidence (including witnesses), and embellished what he perceived as inculpatory evidence, or simply fabricated events or evidence.

i.  Agent Rodgers knowingly reported false evidence (including that "high velocity blood splatter" had been identified on Jeremy Banks' shirt) to the SJSO in an attempt to have Jeremy Banks relieved of duty.  Based upon the false information he provided to the SJSO, Jeremy Banks was relieved of his duties and placed on administrative leave for 13 months, and was significantly stigmatized thereby.

14. On December 6, 2011, the Governor of the State of Florida appointed Special Prosecutor Brad King of the State Attorney's Office of the 5th Judicial Circuit (the "SAO 5th") to an independent investigation of the case.

15. On several occasions during the investigation, SAC Pape as an FDLE Supervisor was advised by SJSO and staff of the SAO 7th and SAO 5th of serious concerns about Agent Rodgers' inappropriate conduct and apparent motives. Despite notice of these concerns and of the pervasive risk this conduct would cause injury to Jeremy Banks, SAC Pape failed to take any action or remedial measures to deter or prevent Agent Rodgers from continuing his unlawful and offensive practices. SAC Pape's response, or lack thereof, demonstrated deliberate indifference to, if not actual authorization of Agent Rodgers' unlawful and offensive practices.

16. On March 12, 2012, the SAO 5th and Special Prosecutor King published the findings of their investigation, which supported and affirmed the SJSO's and the Medical Examiner's finding of suicide.

17. All conditions precedent to be complied with prior to filing this action have occurred. Pursuant to §768.28, Fla.Stat., Jeremy Banks notified the FDLE of these claims more than six months prior to filing this action and these claims were not resolved.

## COUNT I- VIOLATION OF 42 U.S.C. §1983
### Unlawful Search and Seizure of Property; Providing False Information to Obtain a Search Warrant (Against Agent Rodgers)

18. Plaintiff realleges and incorporates paragraphs 1-17 as if fully set forth in this count.

19. Defendant, Agent Rodgers, individually, under color of state law, egregiously and irreparably violated Plaintiff Jeremy Banks' Fourth Amendment right to be free from unlawful search and seizure.

6

20.     On April 12, 2011, Agent Rodgers submitted two search warrant affidavits to St. John's County Judge Charles J. Tinlin for search of two premises, the residence where the suicide occurred and the home where Banks was staying, with the purpose of seizing computer hardware and software believed to contain evidence described in the warrant. These search warrant affidavits contain numerous inaccurate, false, and misleading representations by Agent Rodgers, knowingly contrived for the purpose of demonstrating probable cause to believe Jeremy Banks committed murder. But for the false information, no probable cause existed for these searches and seizures.

21.     Based upon the fabricated and misrepresented evidence set forth in Agent Rodgers' affidavits, the Court issued two search warrants granting authority to search those premises and seize any computer hardware and software found therein, and to conduct a search of such hardware for the described evidence.

22.     Agent Rodgers executed these searches and seizures pursuant to the warrants which were unlawfully obtained.

23.     Additionally, Agent Rodgers conducted an interview of Jeremy Banks at FDLE's Jacksonville office on April 14, 2011. At the conclusion of the interview, after being threatened by Rodgers and being told by Rodgers he had (non-existent) "evidence" against him, Banks, fearful of an injustice about to occur, asserted his constitutional right to an attorney. Immediately thereafter, Agent Rodgers unlawfully and physically seized Banks' iPhone from his person in order to conduct a forensic download.

24.     Agent Rodgers specifically advised Jeremy Banks he had a warrant to seize and search his iPhone; however, no search warrant authorizing Agent Rodgers to seize and search Bank's cellular phone existed. Rodgers simply lied. He also purposely and knowingly exceeded the scope of the warrant he had already obtained through false pretenses and representations.

7

25.     The actions of Agent Rodgers were taken in bad faith or with malicious purpose or with a wanton and willful disregard of Jeremy Banks' rights.

26.     As a direct and proximate result of the aforementioned conduct of Agent Rodgers, Jeremy Banks has suffered and continues to suffer great emotional pain, mental anguish, professional and personal embarrassment, humiliation, stigmatization and irreparable damage to his personal and professional reputation and character. Agent Rodgers' violations of Plaintiff's civil and constitutionally protected rights caused substantial injury and harm to Plaintiff for which he is entitled to compensation in the form of general and special damages.

27.     Plaintiff is entitled to an award of attorneys' fees and costs incident to this 42 U.S.C. §1983 action upon its successful prosecution.

WHEREFORE, Plaintiff, JEREMY BANKS demands judgment against Defendant, RUSTY RAY RODGERS for damages, an award of attorneys' fees and costs, and for such further relief as this Court deems just and proper.

### COUNT II- VIOLATION OF 42 U.S.C. 1983
### Unlawful Detention/Warrantless Arrest
### (Against Agent Rodgers)

28.     Plaintiff realleges and incorporates paragraphs 1-17 as if fully set forth in this count.

29.     Defendant, Agent Rodgers, under color of state law, egregiously and irreparably violated Plaintiff, Jeremy Banks' Fourth and Fourteenth Amendment rights to be free from unlawful and unreasonable seizure of his person and from deprivation of liberty without due process of law.

30.     On April 14, 2011, Agent Rodgers requested Jeremy Banks' voluntary participation in an interview at FDLE's office. At the conclusion of the interview, after Banks requested an attorney, Agent Rodgers terminated Banks' freedom to leave voluntarily, by

8

specifically instructing Banks he was "not free to leave," and telling him he was not permitted to make phone calls.

31.    Jeremy Banks did not consent to being detained, and was detained against his will. As a result of Agent Rodgers' words and actions, Jeremy Banks reasonably believed he was not free to leave, that he had been arrested and was being held in custody.

32.    The restraint and detention of Jeremy Banks was not based upon any lawfully issued process of the Court, Agent Rodgers did not have a valid warrant for Jeremy Banks arrest, and no probable cause existed for an arrest.

33.    The actions of Agent Rodgers were taken in bad faith or with malicious purpose or with a wanton and willful disregard of Jeremy Banks' rights.

34.    As a direct and proximate result of the aforementioned acts of Agent Rodgers, Jeremy Banks has suffered and continues to suffer great emotional pain, mental anguish, professional and personal embarrassment, humiliation and irreparable damage to his personal reputation and character. Agent Rodgers' violations of Plaintiff's civil and constitutionally protected rights caused injury and damage to Plaintiff for which he is entitled to compensation in the form of general and special damages.

35.    Plaintiff is entitled to an award of attorneys' fees and costs incident to this 42 U.S.C. §1983 action upon its successful prosecution.

WHEREFORE, Plaintiff, JEREMY BANKS demands judgment against Defendant, RUSTY RAY RODGERS for damages, an award of attorneys' fees and costs, and for such further relief as this Court deems just and proper.

## COUNT III- VIOLATION OF 42 U.S.C. §1983
### Malicious Prosecution (Against Agent Rodgers)

36.    Plaintiff realleges and incorporates paragraphs 1-17, 19-25 and 29-33 as if fully set forth in this count.

37.    Defendant, Agent Rodgers individually, under color of state law, egregiously and irreparably violated Jeremy Banks' Fourth Amendment rights to be free from unreasonable search and seizure, from pretrial deprivations of liberty and from prosecution without probable cause.

38.    Agent Rodgers commenced criminal proceedings against Jeremy Banks when he unlawfully obtained search warrants for Banks' residences by providing false and misleading information to the Court, thereby convincing the Court probable cause existed to believe Jeremy Banks committed murder.

39.    Agent Rodgers continued these proceedings when he unlawfully arrested Banks without a warrant or probable cause and executed the unlawfully obtained search warrants.

40.    Additionally, Agent Rodgers made knowing misrepresentations and omissions of exculpatory evidence to medical authorities, SJSO and staff of the State Attorney's Office in order to pressure or influence such persons to change their findings from suicide to homicide so that Jeremy Banks would be charged with murder.

41.    A bona fide termination of these proceedings in favor of Jeremy Banks occurred when the Special Prosecutor determined Michelle O'Connell's death to be a suicide and declined to prosecute Jeremy Banks specifically finding no basis to do so.

42.    Agent Rodgers' commencement of criminal proceedings against Banks was without probable cause.  The matters known to Agent Rodgers before the institution of these

proceedings would have not warranted a reasonable man to believe a criminal offense had been committed by Jeremy Banks.

43.    Agent Rodgers acted with malice in instituting these proceedings against Jeremy Banks, implied by the lack of probable cause, and with express malice as shown by his wanton and reckless disregard of Banks' constitutional rights and his baseless personal animosity towards Banks.

44.    The actions of Agent Rodgers were taken in bad faith or with malicious purpose or with a wanton and willful disregard of Jeremy Banks' rights, and the intended effect was outrageous and unconscionable.

45.    As a direct and proximate result of the actions of Agent Rodgers, Jeremy Banks suffered and continues to suffer great emotional pain, mental anguish, professional and personal embarrassment, humiliation and stigmatization, and irreparable damage to both his personal and professional reputation and character.   Agent Rodgers' violations of Plaintiff's civil and constitutionally protected rights caused injury and harm to Plaintiff for which he is entitled to compensation in the form of general and special damages.

46.    Moreover, the actions by Agent Rodgers were purposeful, egregious, and the intended effect was outrageous and unconscionable.  Hence, as is appropriate under this claim, Plaintiff intends to seek an award of punitive damages against Agent Rodgers as a sanction against his willful and unlawful conduct, upon compliance with applicable statutory requirements.

47.    Plaintiff is entitled to an award of attorneys' fees and costs incident to this 42 U.S.C. §1983 action upon its successful prosecution.

WHEREFORE, Plaintiff, JEREMY BANKS demands judgment against Defendant, RUSTY RAY RODGERS for damages, an award of attorneys' fees and costs, and such further relief as this Court deems just and proper.

## COUNT IV- FALSE ARREST
## (Against FDLE)

48.     Plaintiff realleges the allegations in paragraphs 1-17 as if fully set forth herein.

49.     On April 14, 2011, while acting within scope of his employment as an agent for the FDLE, Agent Rodgers unlawfully detained Jeremy Banks by terminating his freedom to leave an interview at FDLE's office, specifically instructing Banks he was, "not free to leave."

50.     Jeremy Banks did not consent to being detained, and was detained against his will. As a result of Agent Rodgers' words and actions, Jeremy Banks reasonably believed he was not free to leave, that he had been arrested and was being held in custody.

51.     The restraint and detention of Jeremy Banks was not based upon any lawfully issued process of the Court, Agent Rodgers did not have a valid warrant for Jeremy Banks arrest, and no probable cause for an arrest existed.

52.     FDLE, through SAC Pape in his official capacity, had actual or constructive knowledge Agent Rodgers had engaged in and continued to engage in conduct which posed a pervasive and unreasonable risk of injury to Plaintiff and/or citizens such as Plaintiff.

53.     FDLE failed to take any action to deter or prevent Agent Rodgers' unlawful conduct, and their response, or failure to respond, showed deliberate indifference to Agent Rodgers' conduct and actual authorization of it.

54.     FDLE's inaction was a direct or contributing cause of Plaintiff's injuries.

55.     As a direct and proximate result of the aforesaid acts of FDLE through its agents, Jeremy Banks has suffered and continues to suffer great emotional pain, mental anguish,

professional and personal embarrassment, humiliation, stigmatization and irreparable damage to his personal and professional reputation and character. Agent Rodgers' unlawful conduct as an FDLE agent caused injuries and damages to Plaintiff for which he is entitled to compensation in the form of general and special damages.

WHEREFORE, Plaintiff, JEREMY BANKS demands judgment against Defendant, the FLORIDA DEPARTMENT OF LAW ENFORCEMENT for damages and such further relief as this Court deems just and proper.

## COUNT V- MALICIOUS PROSECUTION
### (Against Agent Rodgers)

56.   Plaintiff realleges the allegations in paragraphs 1-17, 19-25 and 29-33 as if fully set forth in this count.

57.   Agent Rodgers commenced criminal proceedings against Jeremy Banks when he unlawfully obtained search warrants for Banks' premises by providing false and misleading information to the Court, thereby convincing the Court probable cause existed to believe Jeremy Banks committed murder.

58.   Agent Rodgers continued these proceedings when he unlawfully arrested Banks without a warrant or probable cause, and executed the unlawfully obtained search warrants.

59.   Additionally, Agent Rodgers made knowing misrepresentations and purposeful omissions of exculpatory evidence to medical authorities, the SJSO, and prosecutors in order to pressure or influence such persons to change their findings from suicide to homicide and bring formal charges against Jeremy Banks.

60.   A bona fide termination of these proceedings in favor of Banks occurred when the Special Prosecutor determined Michelle O'Connell's death to be a suicide and declined to prosecute Jeremy Banks.

61.     Agent Rodger's commencement of criminal proceedings against Banks was without probable cause.  The matters known to Agent Rodgers before the institution of these proceedings would have not warranted a reasonable man to believe a criminal offense had been committed by Jeremy Banks.

62.     Agent Rodgers acted with malice in instituting these proceedings against Jeremy Banks, implied by the lack of probable cause, and/or with express malice as shown by his wanton and reckless disregard of Banks' rights and his personal animosity towards Banks.

63.     The actions of Agent Rodgers were taken in bad faith or with malicious purpose or with a wanton and willful disregard of Jeremy Banks' rights, and the intended effect was outrageous and unconscionable.

64.     As a direct and proximate result of the aforesaid actions of Agent Rodgers, Jeremy Banks has suffered and continues to suffer great emotional pain, mental anguish, professional and personal embarrassment and humiliation, stigmatization and irreparable damage to both his personal and professional reputation and character.  Agent Rodgers' wanton and reckless disregard of Plaintiff's rights caused injury and harm to Plaintiff for which he is entitled to compensation in the form of compensatory and special damages.

WHEREFORE, Plaintiff JEREMY BANKS demands judgment against Defendant, RUSTY RAY RODGERS for damages and such further relief as this Court deems just and proper.

## COUNT VI- NEGLIGENT RETENTION OR SUPERVISION
### (Against FDLE)

65.     Plaintiff realleges and incorporates the allegations in paragraphs 1-17 as if fully set forth herein.

14

66.     Defendant, FDLE, through SAC Pape acting in the course and scope of his employment as FDLE Special-Agent-in-Charge, negligently retained and supervised FDLE employee and SAC Pape's subordinate, Agent Rodgers, and such negligent retention and supervision directly and proximately resulted in the unlawful conduct engaged in by Agent Rodgers against Jeremy Banks.

67.     FDLE and SAC Pape had a duty to effectively and reasonably retain, train and supervise their employees such as Agent Rodgers so as to prevent the potential of unlawful conduct by such employees.

68.     Having such duty, FDLE and SAC Pape breached that duty by failing and refusing to adequately or reasonably supervise, train or advise employee Agent Rodgers, which proximately resulted in the unlawful conduct engaged by Agent Rodgers against Jeremy Banks.

69.     FDLE, through SAC Pape, knew or should have known of Agent Rodgers' propensity to engage in and actual engagement in unlawful conduct in furtherance of his own motives and perceptions, and took no reasonable steps to deter or prohibit such conduct.

70.     FDLE did not have in effect sufficient policies or guidelines to regulate or deter the type of conduct engaged in by Agent Rodgers, or if any such guidelines existed, did not reasonably enforce such guidelines.

71.     Despite having knowledge of Agent Rodgers' unlawful and unethical conduct, FDLE and SAC Pape continued to maintain Agent Rodgers' employment and assignment to this case, such that he was permitted to continue engaging in such conduct, foreseeably causing the harm suffered by Jeremy Banks.

72.     As a direct and proximate result of FDLE's and SAC Pape's negligence and breach of duty, Jeremy Banks has suffered and continues to suffer severe emotional harm, mental

anguish, embarrassment, humiliation, stigmatization and irreparable damage to both his personal and professional reputation and character, for which he is entitled to damages.

WHEREFORE, Plaintiff, JEREMY BANKS demands judgment against Defendant, FLORIDA DEPARTMENT OF LAW ENFORCEMENT for damages and such further relief as this Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff demands trial by jury on all issues so triable.

the mcleod firm

ROBERT L. McLEOD II
Fla. Bar No. 369632
LESLIE H. MORTON
Fla. Bar No. 380709
1200 Plantation Island Drive South
Suite 140
St. Augustine, FL 32080
Telephone: 904/471-5007
Facsimile: 904/461-5059
service@themcleodfirm.com (Primary)
lmorton@themcleodfirm.com (Secondary)
Attorneys for Plaintiffs